Jacob V. FALBAUM, Anthony E. Gill, Emile Lewkowiez, and Raymond Terwilliger, Plaintiffs,

v.

John J. POMERANTZ, Alan Golub, Laura H. Pomerantz, Herman Gordon, and B. Michael Thrope, Defendants.

Lee L. KISHBAUGH, Plaintiff,

v.

John J. POMERANTZ, Alan Golub, Laura H. Pomerantz, Herman Gordon, and B. Michael Thrope, Defendants.

Nos. 94 Civ. 5503 (MGC), 94 Civ. 7921 (MGC).

United States District Court, S.D. New York.

July 25, 1995.

---

Wisehart & Koch by Arthur Wisehart, Michael H. Prince, New York City, for plaintiffs.

McDermott, Will & Emery by Joel Cohen, John J. Pomerantz, Alan Golub, Laura H. Pomerantz, and Herman Gordon, New York City, for defendants.

Parker Chapin Flattau & Klimpl, L.L.P. by Alvin Stein, New York City, for defendant B. Michael Thrope.

## MEMORANDUM OPINION AND ORDER

CEDARBAUM, District Judge.

Leslie Fay, a women's clothing manufacturer, is a debtor-in-possession in bankruptcy proceedings in this District. Five former managerial employees sue four current employees of Leslie Fay and Leslie Fay's outside counsel for age discrimination in their "individual capacities" under federal, New York State, Pennsylvania, and New York City law. Jurisdiction is based on a federal question, 28 U.S.C. § 1331, and diversity of citizenship. 28 U.S.C. § 1332.

Defendants move to dismiss the complaints on the ground that only the employer is suable and that they are not subject to personal liability under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., the New York State Human Rights Law, N.Y.Exec.Law §§ 290 et seq.

(McKinney 1993) ("NYHRL"), and the Pennsylvania Human Relations Act ("PHRA"), Pa. Stat.Ann. tit. 43, §§ 951 et seq. (1991 & Supp. 1994). In addition, defendants move to dismiss plaintiffs' claims under the PHRA and the New York City Civil Rights Law ("NYCCRL"), Admin.Code of New York City § 8–101 et seq. (1986 & Supp.1994), for failure to exhaust administrative remedies.

The complaints also assert claims of legal malpractice and breach of fiduciary duty against Herman Gordon, Leslie Fay's general counsel, and B. Michael Thrope, Leslie Fay's outside counsel. At oral argument, I granted defendants' motion to dismiss the claims against Gordon and Thrope but reserved decision on the balance of defendants' motion. (Tr. Feb. 2, 1995 at 34.) For the reasons that follow, defendants' motion to dismiss is granted in part and denied in part.

### Background

Plaintiff Jacob V. Falbaum was Director of Physical Distribution for the Dress Division of Leslie Fay; Anthony E. Gill was Production Manager; Emile Lewkowiez was Director of Quality Control; Raymond J. Terwilliger was Vice President of Human Resources; and Lee L. Kishbaugh was Factory Manager for the Dress Division. Defendants are the Chairman of the Board of Directors and Chief Executive Officer of Leslie Fay, a Senior Vice President, the President, and the General Counsel, who is also a Senior Vice President. Leslie Fay is not named as a defendant in either complaint. Defendants are alleged to be "agents of Leslie Fay who in their supervisory positions instigated, authorized, required, caused, and aided and abetted" age discrimination. (Falbaum Amend.Compl. at ¶ 7; Kishbaugh Compl. at ¶ 6.) Specifically, defendants are alleged to have "conceived, devised and conspired" to implement a discriminatory "reduction-in-force" program, pursuant to which plaintiffs were terminated. (Falbaum Amend.Compl. at ¶ 30; Kishbaugh Compl. at ¶ 28.) In addition, defendants are alleged to have "conspired among themselves and with others to retaliate against those individuals, including plaintiffs, who opposed or protested against defendants' willful and deliberate discrimina-

tory acts and practices, and requested or recommended remedial action with respect thereto." (Falbaum Amend.Compl. at ¶ 31; Kishbaugh Compl. at ¶ 31.)

## Discussion

### I. *Age Discrimination in Employment Act*

■ The ADEA makes it unlawful for an "employer," *inter alia,* to discharge an individual on the basis of age. 29 U.S.C. § 623(a)(1). An employer is defined as "a person engaged in an industry affecting commerce who has twenty or more employees." 29 U.S.C. § 630(b). The statute further defines an employer to include "any agent of such a person." *Id.* Defendants move to dismiss the ADEA claims on the ground that the statutory reference to "agent" authorizes only employer liability for the conduct of employees acting within the scope of their employment, but does not provide an independent cause of action against such employees personally. This question—whether supervisory personnel may be personally liable under the ADEA for acts undertaken in their capacities as agents—has sharply divided courts in recent years.

The ADEA's definition of employer, including the term "agent," is very similar to that found in other civil rights laws such as Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e(b) and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111(5)(A). The issue of the personal liability of agents has also been addressed in cases arising under those statutes, and courts have relied on those cases to interpret the ADEA. *See, e.g., Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510–511 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994). Several Circuits have held that an individual may not be personally liable for conduct performed as an agent under either the ADEA, the ADA or Title VII. *See E.E.O.C. v. AIC Sec. Investigations, Ltd.,* 55 F.3d 1276 (7th Cir.1995) (individuals may not be personally liable as agents under ADA); *Birkbeck,* 30 F.3d at 510–511 (individuals may not be personally liable as agents under ADEA); *Grant v. Lone Star Co.,* 21 F.3d 649, 651–53 (5th Cir.) (individuals may not be personally liable as

agents under Title VII), *cert. denied,* —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); *Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993) (same); *but see Ball v. Renner,* 54 F.3d 664, 668–69 (10th Cir.1995) (declining to reach issue in Title VII case absent proof that defendant exercised managerial/supervisory authority over plaintiff); *see also Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 587 (9th Cir.1993) (individuals may not be personally liable as agents under either the ADEA or Title VII), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) (individual may not be liable in individual capacity under Title VII); *cf. Lenhardt v. Basic Inst. of Technology, Inc.,* 55 F.3d 377, 381 (8th Cir.1995) (individuals may not be liable as agents under Missouri Human Rights Act patterned after Title VII).

The Second Circuit has not been presented with the question, and the decisions in this district have divided. *See, e.g., Coraggio v. Time Inc. Magazine Co.,* No. 94 Civ. 5429 (MBM), 1995 WL 242047, at *9 (S.D.N.Y. 1995) (individuals may not be personally liable under Title VII, but may be named in their "official capacities"); *Dirschel v. Speck,* No. 94 Civ. 330262 (LMM), 1994 WL 330262, at *6 (S.D.N.Y.1994) (individual may be personally liable as agent under Title VII); *Reilly v. Metro–North Commuter R.R. Co.,* No. 93 Civ. 7317 (PKL), 1994 WL 202720, at *1 (S.D.N.Y.1994) (dismissing Title VII claim against individual where no evidence that plaintiff would be prejudiced by proceeding against employer); *Donato v. Rockefeller Fin. Servs.,* No. 93 Civ. 4663 (LLS), 1994 WL 695690 (S.D.N.Y.1994) (denying leave to amend complaint to add individual defendant where plaintiff would "suffer no prejudice" from proceeding against employer alone); *Bramesco v. Drug Computer Consultants,* 834 F.Supp. 120, 123 (S.D.N.Y.1993) (individual may not be personally liable under Title VII and the ADEA absent specific allegations of age discrimination against individual defendant and prejudice in dropping individual defendant from the case); *Archer v. Globe Motorists Supply Co.,* 833 F.Supp. 211, 214 (S.D.N.Y.1993) (dismissing Title VII and ADEA claims against individual defendants,

but noting that allegations of "individualized personal misconduct" might support personal liability); *Allen v. City of Yonkers,* 803 F.Supp. 679, 683 (S.D.N.Y.1992) (individuals may not be personally liable as agents under Title VII); *Bridges v. Eastman Kodak Co.,* 800 F.Supp. 1172, 1180 (S.D.N.Y.1992) (individuals may be personally liable as agents under Title VII); *Elias v. Sitomer,* No. 91 Civ. 8010 (MBM), 1992 WL 370419, at *5 (S.D.N.Y.1992) (individual may be personally liable as agent under the ADEA); *Cheng v. Tams Consultants, Inc.,* No. 90 Civ. 5832 (CSH), 1991 WL 79198, at *3 (S.D.N.Y.1991) (supervisory personnel may be personally liable as agents under Title VII); *Lehtinen v. Bill Communications, Inc.,* 59 Fair Empl. Prac.Cas. (BNA) 1077, 1081, 1989 WL 38130 (S.D.N.Y.1989) (individual who "participated in the decision making process" resulting in the alleged discrimination may be personally liable under Title VII); *Bradley v. Consolidated Edison Co.,* 657 F.Supp. 197, 207 (S.D.N.Y.1987) (employees acting within scope of their authority may not be personally liable under Title VII); *Tuber v. Continental Grain Co.,* 36 Fair Empl.Prac.Cas. (BNA) 933, 937, 1984 WL 1326 (S.D.N.Y.1984) (individuals who "controlled some aspect of [plaintiff's] conditions of employment" are employers under Title VII); *Women in City Gov't United v. City of New York,* 515 F.Supp. 295, 299 (S.D.N.Y.1981) (trustees who approve retirement plan may not be personally liable under Title VII); *Rodgers v. Grow–Kiewit Corp.,* 93 Lab.Cas. (CCH) ¶ 13,431, at 20,541, 1981 WL 2390 (S.D.N.Y.1981) (individual may not be personally liable as agent under the ADEA); *Hannahs v. New York State Teachers' Retirement System,* 26 Fair Empl. Prac.Cas. (BNA) 527, 532, 1981 WL 226 (S.D.N.Y.1981) (individuals may not be personally liable under Title VII insofar as they act "pursuant to their official duties"); *Bradley v. Rockland County Community Mental Health Ctr.,* 25 Fair Empl.Prac.Cas. (BNA) 225, 228, 1980 WL 250 (S.D.N.Y.1980) (individual may be personally liable as agent under Title VII if he "personally participated in the decision making process that forms the basis of the alleged discrimination"); *Friend v. Union Dime Sav. Bank,* 24 Fair Empl. Prac.Cas. (BNA) 1307, 1310, 1980 WL 227 (S.D.N.Y.1980) (individuals may not be personally liable as agents under ADEA).

■ Consideration of this issue must begin with the plain language of the statute, which is ordinarily dispositive. *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–254, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391 (1992). However, "[w]here the result of a literal interpretation of statutory language is absurd, or where the obvious purpose of the statute is thwarted by such slavish adherence to its terms, [the court] may look beyond the plain language" of the statute. *Grand Light & Supply Co. v. Honeywell, Inc.,* 771 F.2d 672, 677 (2d Cir.1985) (citations omitted). This is particularly appropriate where there is an alternative interpretation of the statute consistent with the legislative purpose. *See Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973 (1982). The plain language of the ADEA makes it unlawful for an "employer" to discriminate on the basis of age. In defining this term, the statute specifically exempts persons or entities who employ fewer than twenty employees. By further defining an "employer" to include liability for the conduct of persons acting as "agent[s]," the ADEA adopts the familiar doctrine of *respondeat superior,* under which a principal is liable for the tortious conduct of its agent. *See Birkbeck,* 30 F.3d at 510 (term "agent" incorporates doctrine of *respondeat superior* ). The common law rule is that an employer may be liable for the intentional torts of its employees if they are committed within the scope of employment. *See Shager v. Upjohn Co.,* 913 F.2d 398, 404–05 (7th Cir.1990). This rule applies to the intentional tort of discriminatory discharge. *See id.* at 405 ("[A] supervisory employee who fires a subordinate is doing the kind of thing that he is authorized to do, and the wrongful intent with which he does it does not carry his behavior so far beyond the orbit of his responsibilities as to excuse the employer.") (*citing* Restatement (Second) of Agency § 228 (1957)).

■ The language of the statute suggests that agents might be liable for their conduct under the ADEA, particularly since under general principles of agency law, liability of a principal under the doctrine of *respondeat*

*superior* does not extinguish the liability of a culpable agent. *See Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 972 (2d Cir.1987); Restatement (Second) of Agency, §§ 343, 359C(1), 217B(1) (1957). However, the ADEA does not expressly provide a cause of action against agents—as noted above, the statute only makes it unlawful for an "employer" to discriminate on the basis of age. Although the statute defines an "employer" to include an "agent," treating an agent as subject to suit in an individual capacity appears to conflict with the ADEA's careful definition of "employer" to exempt employers of fewer than twenty persons. Whether this exemption evidences a congressional desire to protect small employers from the burdens associated with litigating discrimination claims, *see, e.g., Miller,* 991 F.2d at 587, or to protect the associational rights of individuals and small entities, *see Jendusa v. Cancer Treatment Ctrs. of Am., Inc.,* 868 F.Supp. 1006, 1013–15 (N.D.Ill.1994), imposing independent personal liability on individual employees in their capacity as agents appears to be at odds with the text and structure of the statute. Individuals who are acting as agents are the "smallest of legal entities," *Grant,* 21 F.3d at 649, and "[i]f Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees." *Miller,* 991 F.2d at 587; *compare Jendusa,* 868 F.Supp. at 1014 (given congressional desire to protect associational rights of small businesses, legislative history of Title VII does not conclusively demonstrate that Congress did not intend individual liability). As one Court of Appeals has recently noted, "it would be incongruous to hold that the ADEA does not apply to the owner of a business employing, for example, ten people, but that it does apply with full force to a person who supervises the same number of workers in a company employing twenty or more." *Birkbeck,* 30 F.3d at 510.

The unique relationship between the Fair Labor Standards Act ("FLSA") and the ADEA does not change this conclusion. Unlike Title VII or the ADA, the ADEA selectively incorporates certain remedies and procedures of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq. See* 29 U.S.C. § 626(b). Because courts have held that "the term employer [under the FLSA] includes individuals with managerial responsibilities and 'substantial control over the terms and conditions of the [employee's] work,'" *Lee v. Coahoma County,* 937 F.2d 220, 226 (5th Cir.1991) (quoting *Falk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 431, 38 L.Ed.2d 406 (1973)), some courts have suggested that Congress intended to incorporate into the ADEA the broad definition of employer in the FLSA. *See, e.g., House v. Cannon Mills Co.,* 713 F.Supp. 159, 160–61 (M.D.N.C.1988). However, the FLSA contains an explicit and more expansive definition of employer than the ADEA. *See* 29 U.S.C. § 203(d) (" 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employer"); *see also* 29 U.S.C. § 203(g) (" 'Employ' includes to suffer or permit to work"). In addition, the fact that the ADEA selectively incorporates certain remedial and procedural portions of the FLSA suggests that Congress intended to adopt only those portions expressly referenced. *See Miller,* 991 F.2d at 588 n. 3. Finally, unlike the ADEA, the FLSA does not exempt small employers from its reach. The FLSA's definition of employer provides no exception for employers who employ fewer than a certain number of employees.

Plaintiffs contend that the ADEA should provide for individual liability because it advances the remedial goals of the statute. The ADEA is one of a series of federal civil rights statutes broadly designed to eradicate invidious discrimination in the workplace. *See McKennon v. Nashville Banner Publishing Co.,* —— U.S. ——, ——, 115 S.Ct. 879, 884, 130 L.Ed.2d 852 (1995). To effectuate this goal, the remedial aspects of the ADEA are designed both to deter employers from engaging in discrimination and to provide relief to the victims of discrimination. *McKennon,* —— U.S. at ——, 115 S.Ct. at 884. Thus, it has been argued that individual liability is necessary to achieve these goals. *See, e.g., Hamilton v. Rodgers,* 791 F.2d 439,

442 (5th Cir.1986).[1] For instance, one judge has observed,

> [t]he prospect of individual liability is essential if the antidiscrimination statutes are to have their full deterrent effect.... This court cannot conclude that Congress intended to accomplish Title VII's deterrence function through indirect reliance upon the marketplace assumptions concerning the actions of rational economic actors/employers after incurring a civil penalty based on the discriminatory conduct of one of their employees.

*Jendusa*, 868 F.Supp. at 1011; *see also Cheng*, 1991 WL 79198, at *3 (supervisory employees may be liable under Title VII in part because a "liberal interpretation of the statute" is "necessary to effectuate its remedial purposes") (*citing Hamilton* ).

■ Plaintiffs also contend that two cases in this district hold that the bankruptcy of an employer or its inability to satisfy a judgment warrants the imposition of personal liability on individual employees acting as agents of the employer. *See Elias v. Sitomer*, No. 91 Civ. 8010 (MBM), 1992 WL 370419, at *5 (S.D.N.Y.1992) (permitting action under ADEA against individual as agent where corporate employer was bankrupt)[2]; *Archer v. Globe Motorists Supply Co.*, 833 F.Supp. 211, 213–14 (S.D.N.Y.1993) (dismissing Title VII and ADEA claims against individual defendants, but suggesting that "if the employer in the present case is undercapitalized and for that reason unlikely to be able to pay any judgment, a basis for penetrating the corporate veil may exist"). Neither case stands for the proposition which plaintiffs advance. Nothing in the opinion in *Elias* suggests that the bankrupt status of the

employer should be a reason for holding the agent personally liable under the statute. If an employer is engaged in bankruptcy proceedings, an aggrieved employee may seek relief in the bankruptcy court, as plaintiffs in this case have done. Furthermore, piercing the corporate veil—an equitable doctrine designed to remedy abuse of the corporate form—is completely separate from the question of whether individual defendants may be personally liable as agents under the ADEA. *See Archer*, 833 F.Supp. at 214.

Other courts have held that the remedial goals of the ADEA are sufficiently advanced by employer liability, since vicarious liability of the sort envisioned by *respondeat superior* provides employers with ample incentives to control discriminatory conduct. *See, e.g., Miller*, 991 F.2d at 588 ("No employer will allow supervisory or other personnel to violate Title VII when the employer is liable for the Title VII violation. An employer that has incurred civil damages because one of its employees believes he can violate Title VII with impunity will quickly correct that employee's erroneous belief."). To the extent that congressional intent can be inferred from the text, structure and history of the statute, the background principles of *respondeat superior* and the specific definition of "employer" support the conclusion that Congress intended to hold employers, but not individual employees, liable for acts of discrimination in employment. Accordingly, defendants' motion to dismiss plaintiffs' claims under the ADEA is granted.[3]

## II. *New York Human Rights Law*

■ The NYHRL prohibits an "employer" from discriminating on the basis of age.

---

1. *Hamilton* is of questionable vitality. In *Grant v. Lone Star Co.*, 21 F.3d 649, 651–53 (5th Cir.), cert. denied, —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994), the Fifth Circuit held that an individual could not be liable for backpay damages in a sexual harassment case under Title VII. The Court distinguished *Hamilton,* noting that a subsequent decision had "rejected a reading of *Hamilton* ... that would permit personal liability for damages under title VII." *See Harvey v. Blake*, 913 F.2d 226, 228 n. 2 (5th Cir.1990) ("to the extent that *Hamilton* is inconsistent with the rule ... that public officials may be liable for backpay under Title VII in their official capacity only, *Hamilton* is nonauthoritative.")

2. *Compare Coraggio v. Time Inc. Magazine Co.*, No. 94 Civ. 5429 (MBM), 1995 WL 242047, *9 (S.D.N.Y.1995).

3. In *David v. Apfel, Levy, Zlotnick & Co.*, No. 91 Civ. 3384 (MGC), 1993 WL 245521, at *6 (S.D.N.Y.1993), I accepted a supplemental Report and Recommendation from a magistrate judge to which objection was not made. To the extent that *David* is inconsistent with my decision in this case, it was erroneous.

N.Y.Exec.Law § 296(1)(a) (McKinney 1993). The statute excludes from its reach "any employer with fewer than four persons in his employ," *id.* at § 292(5), and does not include the term "agent" in the definition of "employer." In *Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984), the New York Court of Appeals affirmed the dismissal of a complaint against an individual under the NYHRL and other state and federal statutes. The court made clear that an individual employee is not liable under the NYHRL if "he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *See* 63 N.Y.2d at 542, 483 N.Y.S.2d at 660, 473 N.E.2d at 12. The complaints do not allege that any of the defendants has an ownership interest in Leslie Fay nor do they identify specific discriminatory employment decisions by any particular defendant with respect to particular plaintiffs other than conclusory allegations of a generalized "conspiracy" involving all defendants. (*See, e.g.,* Falbaum Amend.Compl. at ¶ 28) ("Defendants conspired among themselves and with others for the purpose of willfully discriminating against plaintiffs and others similarly situated on the basis of age.").

Plaintiffs point to the "aiding and abetting" and "retaliation" provisions of the statute, which they contend impose liability upon individuals. The NYHRL makes it unlawful for "any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so," *id.* at § 296(6), or for "any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practice forbidden under this article." *Id.* at § 296(7). A "person" is defined as "one or more individuals" or "corporations." *Id.* at § 292(1). Defendants argue persuasively that the term "person" should be interpreted to exclude individuals in situations in which the parties stand within the scope of a common employment relationship—otherwise, they argue, the limitation embodied in the statutory definition of "employer" and in *Patrowich* could be easily evaded by alleging claims either under an aiding and abetting or retaliation theory. *Cf.*

*Bridges v. Eastman Kodak Co.,* 800 F.Supp. 1172, 1181 (S.D.N.Y.1992) (denying motion to dismiss NYHRL claims against individual; noting that individual might be liable under aiding and abetting provisions "regardless" of employment relationship with corporate defendants). The various parts of a statute should be construed to give meaning to all. One clause should not be read to erase the rest. Accordingly, defendants' motion to dismiss the claims arising under the NYHRL is granted.

### III. *Pennsylvania Human Relations Act*

■ The PHRA prohibits "any employer" from "discharg[ing] from employment" an individual because of "race, color, religious creed, ancestry, age, sex, or non-job related handicap." Pa.Stat.Ann. tit. 43, § 955(a) (1991 & Supp.1994). An employer under the Act is defined as "any person employing four or more persons within the Commonwealth" of Pennsylvania. *Id.* at § 954(b). Like the NYHRL, the PHRA does not use the term "agent," but it does make it unlawful for "any person" to discriminate because an individual "has opposed any practice forbidden by this act," *id.* at § 955(d), or to "aid, abet, incite, compel or coerce the doing of any act" prohibited by the statute. *Id.* at § 955(e). A "person" is defined in the statute as "one or more individuals, partnerships, associations, organizations, legal representatives, trustees in bankruptcy or receivers." *Id.* at § 954(a).

Neither side has identified any Pennsylvania state court decision that addresses whether the PHRA permits individual liability for employees. A Pennsylvania federal district court has held that individual liability is not available under either the ADEA or the PHRA. *Violanti v. Emery Worldwide A–CF Co.,* 847 F.Supp. 1251, 1257 (M.D.Pa. 1994); *see also Barb v. Miles, Inc.,* 861 F.Supp. 356, 359 & n. 1 (W.D.Pa.1994) (no individual liability under Title VII or PHRA). In light of these decisions, and for the reasons discussed above in connection with the ADEA and NYHRL claims, defendants' motion to dismiss the claims under the PHRA is granted.

IV. *New York City Civil Rights Law*

 Section 8–107(1)(a) of the Administrative Code of the City of New York makes it an unlawful discriminatory practice for "an employer *or an employee* or agent thereof, because of the actual or perceived age ... of any person ... to discharge from employment such person." Admin.Code of City of New York § 8–502(c) (1986 & Supp.1994) (emphasis added). Section 8–102(5) defines an "employer" as excluding "any employer with fewer than four persons in his or her employ." Nevertheless, in view of the plain language of the statute, defendants do not argue that they may not be liable as "employees" under the statute. However, they contend that plaintiffs failed to comply with Section 8–502(c), which requires that "[p]rior to commencing a civil action [for unlawful discriminatory practices] ... the plaintiff shall serve a copy of the complaint upon the city commission on human rights and the corporation counsel." Plaintiffs have submitted an affidavit and documentation which demonstrate that they did comply with this requirement. (Aff. of Michael Prince at ¶ 3 and Exhs. A–H.)

Defendants also assert without further elaboration that to the extent that plaintiffs state a claim under the NYCCRL, it would interfere with federal and state law and should therefore be dismissed. The case upon which they rely, *Chambers v. Capital Cities/ABC,* 851 F.Supp. 543 (S.D.N.Y.1994), does not support their position. *Chambers* involved a claim of age discrimination in violation of the ADEA, the NYHRL, and the NYCCRL in which the court dismissed the NYCCRL claim only to the extent that the plaintiffs sought punitive damages.[4] Accordingly, defendants' motion to dismiss the claims under the NYCCRL on the face of the complaint is denied.

### Conclusion

For the foregoing reasons, defendants' motion to dismiss the claims under the ADEA, NYHRL and PHRA is granted, but the motion to dismiss the claims under the NYCCRL is denied.

SO ORDERED.

---

4. Unlike this diversity case, jurisdiction in *Chambers* was based only on a federal question. The NYHRL and NYCCRL claims were included as pendent claims.